UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ALAN BOYD CURTIS,**

     **Plaintiff,**

**v.**                                     **Case No. 8:22-cv-987-MSS-AAS**

**ROBYN PAULINE MISLEVY,** *et al.***,**

     **Defendants.**

_____/

## O R D E R

Curtis sues Robyn Pauline Mislevy, Joshua M. Dreschel, James Brandon Johnson, Dwight Preston, and Janine Rae Saxton in a federal civil rights complaint. (Doc. 1) An earlier order granted Curtis's motion for leave to proceed *in forma pauperis.* (Doc. 7) Accordingly, the Court reviews whether the complaint is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from relief. 28 U.S.C. § 1915(e)(2)(B).

## FACTS

Curtis alleges the following in his complaint. Dreschel, a private attorney who previously worked as a prosecutor, filed a civil action on behalf of Mislevy against Curtis in state court in Pinellas County. (Doc. 1 at 3) The complaint alleged that while on a boat Curtis falsely imprisoned and sexually battered Mislevy. (Doc. 1 at 3) Curtis alleges that the trial judge who presided over the civil action refused to transport Curtis from prison to the jury trial and instead required him to attend trial remotely by telephone. (Doc. 1 at 4) The jury awarded Mislevy $15,000,000.00. (Doc. 1 at 5) Curtis asserts that the state court failed to serve the judgment on him and lacked subject matter jurisdiction over the civil action because

1

the tortious conduct occurred on the high seas. (Doc. 1 at 5–7) He contends that the state court judgment is unenforceable and defective. (Doc. 1 at 6) Attached to the civil rights complaint are (1) an affidavit in support of Curtis's arrest for sexual battery (Docs. 1-1 at 1–3), (2) the complaint in the tort action (Doc. 1-1 at 4–7), and (3) the final judgment in the tort action. (Doc. 1-1 at 8)[1]

Curtis alleges that Johnson, an attorney in Kentucky, filed an action on behalf of Mislevy against Curtis to enforce the Florida judgment, and Saxton, who is Curtis's ex-wife, unlawfully intervened in the action on behalf of a trust. (Doc. 1 at 8–9) Curtis contends that Johnson and Saxton failed to serve him with the complaint in the Kentucky enforcement action, unlawfully domesticated the Florida judgment in the Kentucky enforcement action, and submitted to the Kentucky court a fraudulent affidavit in support of a request for a writ of garnishment. (Doc. 1 at 10–12)

Attached to the civil rights complaint are (1) a motion to intervene in the Kentucky foreclosure action filed on behalf of "Jane Doe" by Johnson (Doc. 1-1 at 9–10), (2) an order granting the motion to intervene (Doc. 1-1 at 11), (3) an intervening third-party complaint filed on behalf of "Jane Doe" by Johnson (Doc. 1-1 at 12–16), (4) an intervening third-party complaint filed on behalf of Saxton by her attorney, Preston (Doc. 1-1 at 17–36), (5) an order domesticating a judgment lien on property in Kentucky (Doc. 1-1 at 40), (6) an affidavit for a writ of non-wage garnishment (Doc. 1-1 at 55, 62), and (7) an order distributing the proceeds of the foreclosure action. (Doc. 1-1 at 59, 63)

---

[1] Judicially noticed records show that a jury in state court found Curtis guilty of kidnapping and sexual battery, and the trial court sentenced Curtis thirty years of prison for the kidnapping conviction, a consecutive twenty-five years for one count of sexual battery, and a consecutive twenty-five years for a second count of sexual battery. *Curtis v. Sec'y, Fla. Dep't Corrs.*, No. 8:21-cv-486-CEH-AAS (M.D. Fla.), ECF No. 12-2 at 243–48.

Curtis further alleges that Johnson, along with Mislevy and the Kentucky judge, scheduled hearings in the enforcement action without notifying Curtis or providing him an opportunity to be heard. (Doc. 1 at 12–13) Curtis contends that Johnson, Dreschel, and Mislevy fraudulently transferred property that belonged to him from Kentucky to Florida. (Doc. 1 at 13–14) Curtis asserts that Saxton violated her duty as a fiduciary of the trust by failing to serve him with court documents, and Preston aided and abetted Saxton by representing her in the action. (Doc. 1 at 14–15)

Curtis asserts sixteen counts against the five defendants. (Doc. 1 at 16–73) Curtis asserts that Dreschel, Johnson, and Mislevy violated his federal rights by filing a complaint in the Florida tort action on behalf of Mislevy as a fictitious plaintiff. (Doc. 1 at 16–20) He asserts that all five defendants violated his federal right to procedural due process (Doc. 1 at 21–43, 56–60), that Preston and Saxton conspired to violate his federal civil rights (Doc. 1 at 44–46), that Preston and Saxton violated his federal right to equal protection (Doc. 1 at 47–49), and that Dreschel, Johnson, and Mislevy conspired to violate his federal civil rights. (Doc. 1 at 50–56) He further asserts that Saxton violated her fiduciary duty to the trust (Doc. 1 at 60–65), that Preston and Johnson tortiously interfered with his contractual relationship with Saxton and the trust (Doc. 1 at 65–70), and that Mislevy is vicariously liable for the tortious interference. (Doc. 1 at 70–73)

Curtis further asserts that the defendants violated Title II of the American Disabilities Act because the defendants knew that Curtis is a legally blind, wheelchair-bound senior citizen with limited use of his left arm. (Doc. 1 at 47–49, 53, 56, 60, 63, 65, 68, 70) He demands monetary and injunctive relief, including criminal prosecution of the defendants.

## STANDARD OF REVIEW

The standard under Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim applies to a review under Section 1915(e)(2)(B) for facial sufficiency. *Henley v. Payne*, 945 F.3d 1320, 1331 (11th Cir. 2019). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Allegations in a *pro se* pleading are reviewed liberally. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

### Federal Civil Rights Claims

Curtis sues Mislevy, who is the victim in his criminal case, Saxton, who is his ex-wife, and Dreschel, Johnson, and Preston, who are private attorneys. Curtis asserts that the defendants violated and conspired to violate his federal civil rights. (Doc. 1 at 21–73)

Curtis asserts that the defendants violated his federal rights by: (1) filing the Florida tort action on behalf of Mislevy as a fictitious plaintiff and preventing him from attending a deposition of the victim (Count One and Count Two); (2) filing the Kentucky enforcement action, preventing him from attending a court hearing in the action, filing a defective complaint and documents with false statements in the action, and failing to serve documents in the action on Curtis (Count Three, Count Four, Count Five, Count Six, Count Seven, Count Eight, Count Nine, Count Ten, Count Eleven, Count Fourteen, Count Fifteen, and Count Sixteen); and (3) fraudulently signing Curtis's name on a deed, embezzling money from a trust, and violating duties under the trust (Count Four, Count Five, Count Seven, Count Eight, Count Twelve, and Count Thirteen). (Doc. 1 at 21–73)

Curtis asserts claims against private actors for private conduct. Because a claim under Section 1983 requires proof of state action, the claims are meritless. *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003) ("'Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.' Section 1983's state action requirement applies regardless of the nature of the substantive deprivation being alleged.") (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

Curtis alleges that Dreschel, who filed the Florida tort action on behalf of Mislevy, was a former prosecutor. (Doc. 1 at 3–4) Because Dreschel did not act in his capacity as a prosecutor when he filed the action, Curtis fails to establish state action under Section 1983. Curtis further alleges that Johnson, Mislevy, and Kentucky Judge Kelly Mark Easton "knowingly on two separate occasions held two *ex parte* proceedings, depriv[ing] [Curtis] of his constitutional right to be heard, prior to depriving [Curtis] of his property rights [ ] at a meaningful time, in a meaningful place, and a meaningful [manner]." (Doc. 1 at 13)

"[A] state court judge, although immune from damages under section 1983, when acting in conspiracy with private defendants, can supply the state action nexus required for a section 1983 suit." *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984) (citing *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980)). Because Curtis fails to allege that the defendants and Judge Easton reached an understanding or agreement to deny Curtis's rights, he fails to state a claim under Section 1983. *Phillips*, 746 F.2d 784, 785 ("[A] naked assertion of a conspiracy between a state judge and private defendants without supporting operative facts provides an insufficient state action nexus for a section 1983 action."); *Wahl v. McIver*, 773 F.2d 1169,

1173 (11th Cir. 1985) ("The brief suggestion that D'Alessandro colluded with Judge Pack to violate appellant's rights also does not state a claim as appellant failed to plead more than a general conclusory allegation of conspiracy.").

Also, records attached to Curtis's complaint refute the procedural due process claim. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). In the final order in the enforcement action, Judge Easton addressed Curtis's claim that he failed to receive adequate process (Doc. 1-1 at 41–45):

> This case essentially involves three people, Alan B. Curtis, his ex-wife Jeanine Saxton, and a daughter, Shileen Curtis Pendleton. The issue is ownership of the house and lot at 705 Charlene Drive, in Vine Grove, Hardin County, Kentucky. Before deciding this issue, the Court should address the status of the parties, including Curtis's repeated objection to the claims asserted by Saxton in an "Intervening Third Party Complaint."

> Curtis's latest trust, ["Alpha and Omega,"] filed this suit through its trustees, the co-plaintiffs, Curtis and Stephen Whitney. The complaint sought ejectment from the property in dispute. The complaint also sought monetary damages for trespass. The complaint squarely places in issue the ownership of this property and thus the right to control its use.

> It should have been no surprise that Pendleton, as a lessee and a named contingent trust beneficiary, would defend and claim Alpha and Omega did not legally own the property. Given the trust documents to be discussed in this judgment, Saxton's claims also should have been anticipated. She has a claim of ownership to this same property.

> . . .

> Curtis again complains he did not participate in the initial docket when Saxton's pleading was permitted. The Court previously address this in at least two orders. The Alpha and Omega trust did not have an attorney appear for this docket. The first order was signed without objection. Even so, when the Court was made aware of Curtis's objections and specifically how to contact him telephonically, he was heard on that matter and many other objections.

As for service of Saxton's intervening claims, pleadings after the original complaint are not served in the same manner. CR 5.01. The fact that Curtis started as trustee but since has a claim against him personally did not require service by a sheriff or new certified mail. Once a party is in the suit, pleadings may be allowed to extend the status of that party from just a representative status, like a trustee, to an individual status as well. *See Cook v. Holland*, 575 S.W.2d 468, 477 (Ky. App. 1978). *State v. Southerland*, 142 So. 883 (Fla. 1930).

Here the Court is presently addressing the ownership of the Kentucky property and its disposition. The claims against Curtis individually to this extent did not require service of new process. This is not a new claim. Rather, it is a claim on the same subject (ownership) serving as the basis of Curtis's complaint. It may not become necessary to address any other claims involving Curtis individually, here or in Florida, depending on the declaration of ownership to be made by this Court in this judgment.

. . .

Another problem is the status of Alpha and Omega itself. Early on in these proceedings, the Court addressed the incapacity of a non-attorney trustee to represent a trust in court proceedings. This may be the unauthorized practice of law. KRS 524.130. In the absence of any published direction on this question, the Court sought specific direction from the Kentucky Bar Association, which confirmed Curtis and Whitney could not represent the trust but only their individual interests. The Court has not received any further or contrary direction.

Clearly, as indicated by the volumes of this file, the trustees of Alpha and Omega received notice of these pleadings and have tried to defeat them. The Court specifically permitted Curtis to proceed in representing his own interests, and he has done so.

Curtis, ostensibly on behalf of Alpha and Omega, started this case. Representatives of that trust have had plenty of time to hire counsel to litigate for that trust, independent of Curtis looking out for his own individual interests. As the Court has pointed out before, the provisions of the trust specifically authorize hiring attorneys. Effectively, the Alpha and Omega trust is in default for never responding by counsel to the competing pleadings of Saxton and Pendleton. Regardless, because of Curtis's view of his individual rights with respect to all the trusts in which he has

> participated, the Court must go forward to determine who owns
> this property.

The final order confirms that Curtis testified at an evidentiary hearing on the issue of

ownership of the property. (Doc. 1-1 at 47, 52)

In an order granting a motion to alter or amend the judgment, Judge Easton further

addressed Curtis's claim that he failed to receive adequate process (Doc. 1-1 at 56–57):

> Counsel for the "Jane Doe" representative Plaintiff in the Florida
> case against Curtis file a timely motion to alter, amend, or vacate
> the order of distribution. Counsel had intervened in this matter,
> including a garnishment against Curtis dated May 20, 2021. It is
> clear under the current state of these cases the garnishment or
> other entitlement of "Jane Doe" to the funds must be honored
> by this Court.
>
> The Court conducted a hearing on the most recent motion on
> June 1, 2021. Having had Curtis participate in prior hearings, the
> Court tried unsuccessfully to arrange for his participation in this
> most recent hearing. In any event, based on prior filings and
> statements by Curtis, the Court is well aware of his objection to
> the determination of ownership of the property as well as any
> right of "Jane Doe" to recover anything against him.
>
> Curtis has appealed more than once in these cases. The Court
> has allowed those appeals without payment of costs given his
> incarcerated and indigent status. These appeals do not prevent
> the enforcement of the judgments of this Court, because of the
> absence of any acceptable supersedeas bond. CR 73.04. For the
> reasons indicated, the motion to alter, amend, or vacate must be
> granted. . . .

Four days later, Curtis filed a motion and requested a hearing. (Doc. 1-1 at 64) Judge

Easton scheduled a hearing on the motion (Doc. 1-1 at 64–65):

> The Plaintiff Curtis filed a motion with notice of a hearing on
> July 6, 2021. The motion with attachments is over thirty pages
> in length. Once again, the Court tried to contact Curtis at the
> prison where he is held. The Court has learned the officer to
> contact for Curtis has changed again. Now with the proper
> contact information, the Court has scheduled the hearing on
> Curtis's latest motion for July 16, 2021, at 10:00 A.M. EST or

> 9:00 A.M. CST. This date was selected with the input of the
> prison officer.
>
> Hearings on the Court's civil docket are usually limited to fifteen
> minutes. This is in part because of the time available for the
> Court for other cases on the docket. This case has had more than
> its share of the Court's time, as the history of the file will show.
> The latest motion revisits prior actions and conflates Curtis's
> multiple pending appeals. The hearing will be limited to fifteen
> minutes; each side will be expected to use no more than half of
> the time. Curtis will need to make sure he does needlessly repeat
> what is in the written motion. The Court expects him to spend
> his time summarizing his position.

On July 19, 2021, Judge Easton entered an order denying Curtis's motion (Doc. 1-1 at

66–68):

> The latest motion again seeks to revisit the issues already
> addressed. Curtis does not cite a specific rule or statute as a basis
> of the latest motion. Curtis states he does not have access to
> Kentucky law materials. The Court then looking at the pleading
> with leniency due to its *pro se* nature may evaluate it as a motion
> to alter, amend, or vacate, although that would seem to be
> untimely with respect to the order entered on June 7, 2021,
> which determined the correct distributions of funds. Allowing for
> delays in communication with Curtis due to his incarceration,
> the Court may still examine the motion under CR 60.02.
>
> This file is now well into its fourth volume. There can be no
> question from any objective viewpoint Curtis has had plenty of
> opportunity to argue his positions about both of these related
> cases. What he seeks to revisit has been visited before and is
> subject to his many appeals. There is no present basis for this
> Court to alter the result of the property ownership issue or the
> impact of the Florida judgment on the proceeds of the property
> sale.
>
> Should Curtis be successful in his ongoing challenge to the
> Florida judgment through a proper process, he will then be able
> to have an order for the return of any funds distributed on the
> basis of that judgment. The "Jane Doe" client and attorney
> should be aware of that possibility. The "Motion to Correct
> Procedural Due Process and to Dismiss Fraudulent Fictitious
> Affidavit for Writ of Garnishment" is denied.

These records attached Curtis's complaint refute his claim that Johnson and Mislevy conspired with Judge Easton to deprive his right to procedure due process. "'The plaintiff attempting to prove such a conspiracy must show that the parties reached an understanding to deny the plaintiff his or her rights.'" *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) (quoting *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1563 (11th Cir. 1990)). "[A]n 'understanding' and 'willful participation' between private and state defendants is necessary to show the kind of joint action that will subject private parties to § 1983 liability." *Bendiburg*, 909 F.2d at 469.

Judge Easton ensured that Curtis received adequate process during the Kentucky enforcement proceeding and permitted Curtis to testify at an evidentiary hearing. (Doc. 1-1 at 47, 52) The judge attempted to secure Curtis's attendance at the hearing on Mislevy's motion to alter to amend. (Doc. 1-1 at 56–57) Four days after the judge granted the motion to alter or amend, Curtis filed a motion and requested a hearing, and the judge contacted the prison where Curtis was incarcerated and scheduled a hearing on the motion with prison staff. (Doc. 1-1 at 64–65) Even though the motion was untimely, the judge liberally construed Curtis's motion to permit review of the merits of the motion and ruled on the motion. (Doc. 1-1 at 67) The judge advised Curtis that he could return to the Kentucky court for relief if he successfully attacked the Florida judgment. (Doc. 1-1 at 67–68) Also, the judge permitted Curtis to appeal the Kentucky enforcement action without payment of the filing fee. (Doc. 1-1 at 57) These acts by Judge Easton demonstrate that he did not willfully agree to deprive Curtis of his federal right to procedural due process. *Bendiburg*, 909 F.2d at 468 ("The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy.") (citation omitted); *Harvey v. Harvey*, 949 F.2d 1127, 1133

(11th Cir. 1992) ("The allegations of Mrs. Harvey's complaint merely string together the discrete steps of the commitment process, without showing contacts between the appellees that could prove private and alleged state actors had 'reached an understanding' to violate her rights.").

### *Rooker-Feldman* **Doctrine**

Curtis requests that the Court "void" the judgment in the Florida tort action to prohibit the defendants from enforcing the judgment (Doc. 1 at 20, 23) and create a trust on the property in Kentucky to enjoin enforcement of the judgment in the Kentucky action. (Doc. 1 at 35, 38, 43, 46, 49, 52, 55, 59, 62, 64, 67, 69, 73) He contends that the defendants filed deficient and fraudulent pleadings in both actions, filed the actions in the wrong court, failed to properly serve those pleadings on him, and prevented him from attending hearings in those actions. (Doc. 1 at 16–73)

"The *Rooker–Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009). The doctrine bars "'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021) (quoting *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

If the defendants filed deficient or fraudulent pleadings, if the state courts lacked jurisdiction over the actions, if the defendants failed to properly serve the pleadings, or if the state courts unlawfully prohibited him from attending hearings, Curtis should have raised

these issues on appeal or in post-judgment proceedings in state court in Florida and Kentucky. *May v. Morgan Cty. Ga.*, 878 F.3d 1001, 1007 (11th Cir. 2017) ("May argues in the alternative that . . . *Rooker-Feldman* does not apply because the state court in the first civil case lacked subject matter jurisdiction. She asks us to recognize an exception to *Rooker-Feldman* on that basis. As of now, we have never adopted that exception."); *Ferrier v. Cascade Falls Condo. Ass'n, Inc.*, 820 F. App'x 911, 914 (11th Cir. 2020)[2] ("[W]e have not recognized a fraud exception to the *Rooker-Feldman* doctrine, and we decline to do so now. Indeed, such an exception would effectively gut the doctrine by permitting litigants to challenge almost any state-court judgment in federal district court merely by alleging that 'fraud' occurred during the state-court proceedings.").

Because this Court lacks jurisdiction to "void," vacate, or enjoin enforcement of a state court judgment, Curtis's demand for injunctive relief is meritless under *Rooker-Feldman*. *Casale*, 558 F.3d at 1261 ("We are not a clearinghouse for Casale's overstock arguments; if he did not offer them to the state courts — or if the state courts did not buy them — he cannot unload them by attempting to sell them to us.").

**American Disability Act Claims**

Curtis asserts that the defendants violated Title II of the American with Disabilities Act by filing the Kentucky enforcement action knowing that Curtis is "a protected person, or in a class of protected persons, that is a senior citizen, visually impaired, legally blind, wheelchair bound, with limited use of his left arm." (Doc. 1 at 47–48, 51, 53, 56, 60, 63, 65, 68, 70) Title II of the ADA states that "no qualified individual with a disability shall, by reason

---

[2] 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Because the defendants are not "public entit[ies]," Curtis's ADA claims against the private actors fail. 42 U.S.C. § 12131(1) (defining public entity as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government"); *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010) ("We [ ] hold that the term 'instrumentality of a State' refers to governmental units or units created by them.").[3]

**Constitutional Challenge to State Statute**

In Count One, Curtis asserts that Dreschel, Johnson, and Mislevy violated his federal rights by filing a complaint in a civil action on behalf of Mislevy as a fictious plaintiff. (Doc. 1 at 16–20) He contends that Section 794.03, Florida Statutes, did not authorize the defendants to file a complaint on behalf of a fictitious party and requests that the Court "declare" Section 794.03 unconstitutional as applied to his civil case. (Doc. 1 at 16, 18–19)

"[A] plaintiff must commence a § 1983 claim arising in Florida within four years of the allegedly unconstitutional or otherwise illegal act." *McGroarty v. Swearingen*, 977 F.3d 1302, 1307 (11th Cir. 2020) (citation and internal quotations omitted). "A cause of action [ ] will not accrue, and thereby set the limitations clock running, until the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003).

---

[3] Curtis alleges that "the Kentucky[ ] court[ ] has failed or refused to provide adequate procedure to a legally blind, handicapped, indigent, out of state, incarcerated person, without access to Kentucky laws or rules of procedure to remedy the procedural deprivation . . . ." (Doc. 1 at 28) Curtis does not sue the Kentucky court, and the proper venue for a claim under the ADA against the Kentucky court is a federal court in Kentucky. 28 U.S.C. § 1391(b).

The complaint alleges that, on February 13, 2009, Dreschel filed a complaint on behalf of Mislevy, as a fictitious plaintiff. (Doc. 1 at 3) The complaint further alleges that, in 2010, Curtis became aware that the trial court lacked jurisdiction over Mislevy because she proceeded as a fictitious plaintiff. (Doc. 1 at 4) On April 25, 2022 (Doc. 1-3), Curtis placed in the hands of prison officials for mailing his complaint. Because in 2010 Curtis became aware of the injury that the defendants allegedly inflicted, his as-applied challenge is barred by the statute of limitations. *Nance v. Comm'r, Ga. Dep't Corrs.*, 59 F.4th 1149, 1153 (11th Cir. 2023) ("The limitations period in an as-applied challenge 'does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'") (citation omitted).

**Demand for Prosecution**

Curtis demands that the Court refer the defendants to a prosecutor for criminal charges. (Doc. 1 at 20, 24, 28, 35, 44, 46, 49, 53, 56, 59, 62, 64, 67, 70, 73) Because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another," his demands for prosecution fail. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

**State Law Claims**

In Count Eleven, Curtis asserts a wrongful garnishment claim against Johnson, Dreschel, and Mislevy. (Doc. 1 at 56–59) In Count Twelve and Count Thirteen, he asserts claims for accounting and breach of a fiduciary duty against Saxton and Preston. (Doc. 1 at 60–65) In Count Fourteen, Count Fifteen, and Count Sixteen, he asserts claims for tortious interference with a contract against Preston, Johnson, and Mislevy. (Doc. 1 at 65–73) Because Curtis fails to allege a federal civil rights claim, the Court declines to exercise supplemental jurisdiction over these state law claims and dismisses the claims without prejudice for Curtis

to seek relief in state court. 28 U.S.C. § 1367(c)(3). *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296–97 (11th Cir. 2018).[4]

Accordingly, the claim in Count One asserting an as-applied constitutional challenge is **DISMISSED** as barred by the statute of limitations. The federal civil rights claims, the ADA claims, and the demands for prosecution in all counts are **DISMISSED** for failure to state a claim. The demands for injunctive relief to "void" or enjoin enforcement of the Florida and Kentucky state court judgments in all counts are barred by *Rooker-Feldman*. The state law claims in Count Eleven, Count Twelve, Count Thirteen, Count Fourteen, Count Fifteen, and Count Sixteen are **DISMISSED** without prejudice for Curtis to seek relief in state court. Because a more carefully drafted complaint could not state a federal civil rights claim against the defendants, the Court **DISMISSES** Curtis's complaint (Doc. 1) without leave to amend. *Woldeab v. DeKalb Cty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018). The Clerk is **DIRECTED** to **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida on November 29, 2023.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

---

[4] Curtis, a citizen of Florida, sues Mislevy, Dreschel, Johnson, Saxton, and Preston and demands more than $75,000.00. (Doc. 1 at 2–3, 59, 62, 64, 67, 70, 73) Even though Johnson, Saxton, and Preston are citizens of other states, Mislevy and Dreschel are citizens of Florida. (Doc. 1 at 2–3) Because diversity jurisdiction requires complete diversity between a plaintiff and all defendants, the Court cannot exercise diversity jurisdiction over the state law claims. *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1239 (11th Cir. 2005) ("Complete diversity requires that no defendant in a diversity action be a citizen of the same state as any plaintiff.") (citing 28 U.S.C. § 1332). Even if Curtis could demonstrate complete diversity, the proper venue for the state law claims arising from the Kentucky enforcement proceedings is a federal court in Kentucky. 28 U.S.C. § 1391(b)(2).